**TEXAS EMPLOYMENT COMMISSION and J.C. Penney Company, Inc., Appellants,**

v.

**Jerry LEWIS, Appellee.**

**No. 2–88–266–CV.**

Court of Appeals of Texas, Fort Worth.

Sept. 21, 1989.

Publication Ordered Oct. 18, 1989.

Mary G. Tacher, Dallas, for appellant J.C. Penney.

Jim Mattox, Atty. Gen. and Bill Kimbrough, Asst., for appellant Texas Employment Com'n.

Vernon Lewis, Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and KELTNER, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is an appeal from a judgment reversing a decision by the Texas Employment Commission (TEC) that it had jurisdiction over an appeal brought by J.C. Penney Company, Inc. (Penney). The trial court reversed the decision reached by the TEC that Jerry Lewis (Lewis) was not entitled to unemployment compensation and that he was overpayed benefits, and remanded the case to the TEC for calculation and payment of benefits to Lewis because the trial court held that TEC no longer had jurisdiction.

We affirm.

Lewis left his employment as a custodian at Penney on October 17, 1986, believing he had been verbally abused. He contended his supervisor had directed profane and abusive language toward him. Lewis filed a claim for unemployment benefits on October 20, 1986, on which he listed Penney's address as: J.C. Penney Co., Inc. 1600 Green Oak Rd. Ridgmar Ft. Worth, TX 76116. On October 21, 1986 the TEC mailed to Penney a Notice to Employer of Claim for Unemployment Insurance. The notice was mailed to the address listed by Lewis, not Penney's correct address.

Penney received the notice and its response to the initial claim was drafted by its personnel manager, D. Walje, on October 24, 1986. Walje testified, but could not say when the form for filing the response was received by J.C. Penney without reviewing the file. He was sure it would have been the same day (that he received it) but would have had to do some research before he could tell. The form for the response is the reverse side of the notice to the employer of the claim for unemployment insurance. Walje testified that at the

time these events were occurring the mail normally came into the store, was delivered to the switchboard operator's desk, and from there it was distributed to the offices.

On November 3, 1986, the TEC mailed to Penney at the 1600 Green Oak Road address (the same address to which it had sent the initial notice of claim) a TEC Notice of Claim Determination in Lewis's favor. The notice indicated that any appeal based upon it had to be filed within twelve calendar days after the date mailed as reflected in the lower right hand corner of the notice, which was November 3, 1986. In a letter dated November 17, 1986, Walje requested an appeal. This request was beyond the time for appealing the November 3 notice. Penney gave no reason in the letter for its late response. Neither the November 17th nor the October 24th responses made any mention of the fact that the TEC notices were sent to an incorrect address.

At trial the following exchange occurred between Mr. Lewis's attorney, also named Lewis, and Walje:

Q. [Attorney Lewis] Thank you. How was the mail distributed at the J.C. Penney Company, Inc.; the one that Mr. Lewis worked at?

A. [Walje] At that time, the mail normally came into the store and was brought to our switchboard operator's desk and then she would, as a rule, distribute it to the offices.

Q. Okay. And your testimony at this hearing is that you received it in your office as personnel manager the same day that you wrote the letter on page thirty-five?

A. Well, it's been my practice during the entire tenure as personnel manager to respond to those things, you know, the same day. I'd, again, have to see the postmark on the envelope.

Q. All right. And this, however, you cannot say when J.C. Penney Company received it, only that you received it on that day; isn't that correct?

A. If I saw the postmark I could probably tell you, on the envelope?

Q. I'm asking you at this time.

A. Virtually, I can't tell you from memory, no, sir.

The TEC had permitted J.C. Penney to proceed with its appeal notwithstanding the late notice of appeal. The trial court, however, found there was not substantial evidence to support the decision of the TEC that it had jurisdiction over Penney's appeal. Penney, in its sole point of error, and the TEC, in its ninth point of error, contend the trial court erred in finding there was not substantial evidence to support the TEC decision that TEC had jurisdiction to hear Penney's late appeal of the original benefits determination.

An action by the court to review a decision of the TEC is governed by the substantial evidence rule, *Mercer v. Ross,* 701 S.W.2d 830 (Tex.1986) under which the issue to be decided is the reasonableness of the TEC decision. *DeLeon v. TEC,* 529 S.W.2d 268 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Under the substantial evidence rule, the TEC ruling is presumed to be valid. *Mercer,* 701 S.W.2d at 831. The burden is upon the appealing party to show the TEC decision is not reasonably supported by substantial evidence. *Id.* A number of decisions have determined the order of the administrative agency must be upheld if it is reasonably supported by substantial evidence introduced at the trial court. *TEC v. Hartzheim,* 549 S.W.2d 770, 773 (Tex.Civ.App.—San Antonio 1977, no writ). The following statement of the substantial evidence rule comes from *DeLeon:*

[T]he issue to be decided in the courts and on which evidence is heard is the reasonableness of the Commission's decision; this is a question of law and an appellate court cannot render its decision based upon facts found by the trial court because the legal test of the reasonableness of the decision of the Commission is whether it is supported by substantial evidence, and nothing else.

*DeLeon,* 529 S.W.2d at 270 citing *City of San Antonio v. Texas Water Commission,* 407 S.W.2d 752, 756 (Tex.1966).

Substantial evidence does not have to be much evidence at all and although substan-

tial means more than a mere scintilla, or some evidence, it is less than that required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. *Mutual Building and Loan Association v. Lewis,* 572 S.W.2d 771, 778 (Tex.Civ.App.—Austin 1978, no writ). The burden to demonstrate that the TEC ruling is not supported by substantial evidence is on the party seeking to have the determination overruled. *Fireman's and Policemen's Civ. Serv. Commission v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984). "The reviewing court must inquire whether the evidence introduced before it shows facts in existence at the time of the administrative decision which reasonably support the decision." *Id.*

■ Appellants contend: there is evidence that Penney received the notice of claim determination too late to file a timely appeal; and that TEC's decision was proper that timely appeal by Penney was precluded by TEC's failure to mail the notice to the correct address. It is undisputed that the notice of claim determination was mailed to Penney by the TEC on November 3, 1986. Although mailed to an address other than Penney's technically correct address, it is undisputed that Penney actually received the notice. The issue is whether substantial evidence was presented to support Penney's assertion that it did not receive the notice in sufficient time to give the TEC a timely notice of its intent to appeal.

Penney cites the following as substantial evidence upon which the TEC based its decision: (1) Lewis gave the TEC an incorrect address for Penney; (2) the TEC mailed its determination to Penney at the incorrect address; (3) the TEC had Penney's correct address in its records when it mailed the determination to the incorrect address; and (4) a Penney representative testified that the notice of appeal was prepared and mailed as soon as the determination was received by Penney.

While Lewis gave the TEC an incorrect address for Penney, to which the TEC mailed the determination, we find this to be no evidence as to when Penney received the notice. We find tenuous at best Penney's reliance upon the fact that the TEC had Penney's correct address in its file when the notice of determination was mailed. Penney relies for this assertion upon the fact that the return address on the envelope in which it sent TEC its response to Lewis's original claim for benefits had Penney's correct return address on it. However, an unreasonable burden would be placed upon the TEC to determine whether every piece of mail which it received was in fact coming from the same address to which it had originally sent a correspondence, absent some affirmative notice by the party mailing the return correspondence that the initial contact had been addressed incorrectly.

Neither response by Penney, either to the initial notice of claim or the later determination of claim, mentioned correspondence was being sent to the wrong address. Instead of being evidence that mail was sent to the wrong address, it raises the question of whether Penney itself even knew its incoming mail was addressed improperly. It provides *no evidence* of *when* Penney received the determination of claim notice.

Walje testified that to the best of his knowledge the notice of appeal was prepared and mailed as soon as *he* received the notice of determination. This is contradicted by the evidence that Walje's response is dated November 17, 1986 but not postmarked until two days later on November 19, 1986. At this point, we recall that the original notice of claim was filed by Lewis on October 20th, and sent to the same incorrect address by TEC on October 21st, yet Walje's response for Penney was drafted by October 24th.

The testimony indicated that incoming mail did not go directly to Walje but instead "normally came into the store and was brought to [Penney's] switchboard operator's desk ... [who] would, *as a rule,* distribute it to the offices." Under these circumstances the date of Walje's response (November 17th) may be some evidence of when *he* received the notice, but it is not evidence of when *Penney* received the no-

tice. Walje indicated that without researching the file and finding the envelope in which it came, he in fact had no idea when Penney received the determination of claim notice. Because no evidence was presented as to when *Penney* received the notice, there was not substantial evidence to support the TEC's determination that it retained jurisdiction over Penney's appeal. The trial court committed no error in reversing the TEC ruling. Penney's sole point of error and the TEC's ninth point of error are overruled.

■ In its second point of error, the TEC contends it has no authority to deny jurisdiction of the appeal when it made a mistake in sending the notice of claim determination to the wrong address. By its third point of error the TEC argues the trial court erred in entering judgment for Lewis because the determination did not become final before Penney gave notice of appeal, since the determination was not mailed to Penney at its last known address reflected by TEC records.

The TEC cites *Texas Employment Commission v. Johnnie Dodd Automotive Enterprises, Inc.,* 551 S.W.2d 171 (Tex.Civ. App.—Waco 1977, writ ref'd n.r.e.) and *Todd Shipyards Corp. v. Texas Employment Commission,* 153 Tex. 159, 264 S.W.2d 709 (Tex.1953) for the proposition that if the TEC's own mistake forecloses a party from obtaining a hearing, that hearing cannot lawfully be denied, and on appeal the commission will be reversed.

*Johnnie Dodd* is a case where the employer offered proof that he received no notice at all. *Johnnie Dodd,* 551 S.W.2d at 172. In *Todd Shipyards* the court held that the mere fact the employer had received less than the statutory prescribed notice was not enough to permit the petitioner in that case to claim probable prejudice therefrom because the petitioner was nonetheless warned in ample time. *Todd Shipyards,* 264 S.W.2d at 715.

However, there is no dispute that in this case Penney received the notice in spite of the fact it was not addressed properly. Whether improper address was the fault of the TEC, or Penney's fault for not bringing the variance to the TEC's attention, or Lewis's fault for giving the incorrect address originally, is immaterial to the burden of Penney to show why it appealed late. Penney received the notice. It was within Penney's power at trial to prove *when* it received the notice and this it failed to do. The TEC's second and third points of error are overruled.

■ By its fourth point of error, the TEC asserts the trial court erred in ruling the TEC lacked jurisdiction to hear Penney's appeal because the court in effect interpreted article 5221b-4(b) to create an irrebuttable presumption of timely receipt of the determination notice by merely showing it was mailed, even though to the wrong address. *See* TEX.REV.CIV.STAT. ANN. art. 5221b-4(b) (Vernon Supp.1989). Lewis conceded to the trial court that the case law indicated the statute does not create an irrebuttable presumption of timely receipt of the notice. However, we again restate there is no dispute that Penney actually received the notice. The issue was *when* did Penney receive it. Penney had ample opportunity to provide the court with information as to when it, not Walje, received the notice and for whatever reason was either unwilling or unable to do so. There is no indication the trial court applied an irrebuttable presumption of timely receipt of the notice. Penney was free to rebut. Appellant TEC's fourth point of error is overruled.

■ In its fifth and sixth points of error, the TEC argues the trial court erred: (5) because Lewis's failure to state Penney's correct address on his claim form makes it impossible for the TEC to carry out the purpose of the act to where it is compelled to deny an employer the right to appeal from a determination where the notice is mailed to an incorrect address; and (6) because the TEC is authorized to take such action as it deems suitable or necessary to administer the act and Lewis has not proved that TEC, in allowing Penney to appeal, abused its discretion. We hold that because Penney failed to present evidence to support its contention that the notice of determination was not received in time for

it to make its appeal to the TEC, the TEC abused its discretion when it heard Penney's appeal, lacking jurisdiction to do so. There is no evidence that Lewis's providing an incorrect address denied Penney notice, nor that TEC needed to do anything to assist Penney in its appeal. Appellant's sixth point of error is overruled.

Lewis's failure to give the correct address for Penney did not make it "impossible for the commission to administer the act to carry out the purposes of the act." There was no evidence the mailing of the determination notice to the incorrect address precluded Penney from filing a timely appeal. Penney received the notice, even though incorrectly addressed. Penney was the only party who had the means to provide evidence of *when* it received the notice. It failed to do so. Appellant's fifth point of error is overruled.

In its seventh point of error the TEC contends that Penney's evidence it did not receive the determination notice until fourteen days after it was mailed by the TEC supports the TEC's finding that the local office's failure to mail the notice to Penney's correct address precluded Penney from filing a timely appeal. The TEC has once again blurred the distinction between receipt of the notice by Walje and receipt of the notice by Penney. We have already determined that evidence of when *Walje* may have received the notice does not, under the circumstances, constitute evidence of when *Penney* received the notice. Penney did not provide any evidence that *it* did not receive the notice in time to timely file an appeal. The TEC's seventh point of error is overruled.

The TEC's eighth point of error contends the courts must presume the TEC's decision is correct and that Lewis did not prove that the evidence supporting the TEC's decision was perjurious, incredible, or unreasonable. The TEC is referring to the statement by Walje that to the best of his knowledge the appeal letter by Penney dated November 17, 1986 was written the day he received the determination notice. Because we have already held that this is not evidence of when Penney received the no-

tice, it is of no consequence whether Lewis proved it to be perjurious, incredible or unreasonable. When asked, Walje could not say when Penney received the notice in question. Appellant's eighth point of error is overruled.

By its first point of error, the TEC contends the trial court erred in filing findings of fact and conclusions of law. TEC contends they are a nullity because the question of whether there is substantial evidence to support the TEC's decision is one of law, not fact. In its judgment, the trial court found there was not substantial evidence to support the decision of the TEC that it had jurisdiction over Penney's appeal. Subsequent to the trial court rendering judgment, Penney requested the trial court to file findings of fact and conclusions of law, which the trial court did. This was error.

Lewis argues that while the trial court may not have been required to file findings of fact, there was no error in the court doing so, and further argues the error, if any, was harmless. Lewis contends that since they came post-judgment, the findings of fact cannot be said to have caused the rendition of an improper judgment.

In reviewing an administrative agency decision, the only proper issues to be decided by a trial court are questions of law. However, the trial court, by filing findings of fact, did not commit reversible error. TEX.R.APP.P. 81(b)(1). Reversal should be ordered for an error that has resulted in an improper judgment. Because we hold the trial court did not err in holding there was no substantial evidence to support the TEC's determination of jurisdiction, we also overrule the TEC's first point of error.

The judgment is affirmed.